IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| JERELYN DENSON, et al., | * | |
| Plaintiffs | * | |
| | * | Civil Case No. JKB-22-2526 |
| v. | * | |
| CAPITAL JAZZ INC., | * | |
| Defendant | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Plaintiffs, Jerelyn Denson and Tyea Santiago, filed this putative class action against

Defendant Capital Jazz Inc. ("Capital Jazz") pursuant to the Class Action Fairness Act of 2005

("CAFA"), 28 U.S.C. § 1332(d). (*See* Compl., ECF No. 1.) Currently pending before the Court

is Plaintiffs' Motion for Default Judgment, Attorneys' Fees and Costs. (ECF No. 11.) Capital

Jazz has failed to respond to the Motion or to otherwise defend this action. No hearing is necessary

to resolve the Motion. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, the

Court lacks subject matter jurisdiction over this case. Accordingly, the Court will deny Plaintiffs'

Motion and dismiss this case pursuant to Federal Rule of Civil Procedure 12(h)(3).

### I.     *Factual Background[1] and Procedural History*

This action arises out of Plaintiffs' failed attempts to obtain refunds for monies they paid

toward an event called "SuperCruise XIV"—a sea cruise organized by Capital Jazz that was

---

[1] Defendant, "by [its] default, admits the plaintiff's well-pleaded allegations of fact[.]" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Accordingly, at this stage of litigation, the Court accepts as true the well-pleaded facts alleged in the Complaint.

canceled prior to its departure. *(See generally* Compl.)  As background, Plaintiffs Denson and Santiago are residents of Illinois and New Jersey, respectively.  *(Id.* ¶¶ 7, 19.)  Capital Jazz is a "music performance production company" headquartered in Maryland that charters cruise ships for annual jazz-themed sea cruises.  *(Id.* ¶¶ 31, 36–37.)  In 2019, Capital Jazz contracted with Royal Caribbean, a non-party to this action, to charter a ship for SuperCruise XIV (the "Cruise"). *(Id.* ¶¶ 39, 45.)  The Cruise was scheduled to sail from January 14, 2022, to January 22, 2022.  *(Id.* ¶ 40.)  On September 15, 2021, Plaintiff Denson booked the Cruise for herself and for her husband. *(Id.* ¶ 8.)   She ultimately paid Capital Jazz, through installments, a total of $5,325 for the Cruise. *(Id.* ¶¶ 8–9.)  On September 17, 2021, Plaintiff Santiago booked the Cruise for herself.  *(Id.* ¶ 20.) She ultimately paid Capital Jazz, through installments, a total of $4,550 for the Cruise.  *(Id.* ¶ 21.)

On January 7, 2022, Capital Jazz canceled the Cruise based upon a travel warning issued by the United States Centers for Disease Control and Prevention ("CDC").  *(Id.* ¶¶ 46–50.)  That same day, Capital Jazz sent Plaintiffs Denson and Santiago individual emails to notify them that the Cruise had been canceled.  *(Id.* ¶¶ 10, 22.)  On January 24, 2022, Capital Jazz sent an email to all individuals who had booked the Cruise, directing them to select one of three options as reimbursement for the Cruise's cancellation.  *(Id.* ¶ 51.)  Pursuant to the email, passengers could either: (1) transfer their reservations to a future cruise at no additional cost; (2) receive a credit toward a future event based upon the amount paid for the Cruise; or (3) receive a refund for the amount paid, less a three percent deduction for any credit card payments made.  *(Id.)*  The email directed passengers to submit their reimbursement option by March 1, 2022.  *(Id.)*  Passengers who selected the third option were directed to allow up to 90 days for refunds to be processed.  *(Id.)*

Plaintiffs Denson and Santiago submitted requests for full refunds before the March 1, 2022 deadline.  *(Id.* ¶ 53.)  But Capital Jazz did not issue Plaintiffs Denson or Santiago their

requested refunds, even after they made multiple follow-up attempts to secure their refunds in 2022. (*Id.* ¶¶ 14–15, 26–27.) Plaintiffs allege that "hundreds, if not thousands, of persons and entities" not named in the Complaint also paid for the Cruise and were unable to obtain refunds from Capital Jazz after making timely requests. (*Id.* ¶¶ 65–67.) Specifically, Plaintiffs allege that "approximately 146 complaints against Capital Jazz have been filed with the Better Business Bureau, an overwhelming majority of which are Cruise passengers who requested a full refund from Capital Jazz but have not received it . . . ." (*Id.* ¶ 54.) Plaintiffs allege that "some of these passengers paid Capital Jazz as much as $8,478" for the Cruise. (*Id.* ¶ 55.) Plaintiffs' Complaint also quotes a July 11, 2022 article detailing a news station's efforts to secure refunds for Cruise customers. (*Id.* ¶¶ 60–61 (stating that Washington ABC 7News "forwarded more than 50 new names of viewers to Capital Jazz who are requesting a refund.")) At least four Cruise customers have publicly posted requests for refunds on Capital Jazz's Facebook page. (*Id.* ¶ 58.)

On October 3, 2022, Plaintiffs commenced this action. (*See generally id.*) Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs assert claims on behalf of themselves and three proposed classes: (1) a nationwide class of all persons who paid for the Cruise; (2) a subclass of persons who paid for the Cruise in Illinois; and (3) a subclass of persons who paid for the Cruise in New Jersey. (*Id.* ¶ 63.) Plaintiffs' Complaint asserts the following six claims: (1) breach of contract (on behalf of the nationwide class or alternatively the state subclasses); (2) conversion (on behalf of the nationwide class or alternatively the state subclasses); (3) unjust enrichment (on behalf of the nationwide class or alternatively the state subclasses); (4) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1 *et seq.* (on behalf of the New Jersey class); (5) violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (on behalf of the Illinois class); and (6) violations of the Maryland

Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 *et seq.* (on behalf of the Illinois class). (*Id.* ¶¶ 71–114.)

After Capital Jazz failed to answer the Complaint or to otherwise defend this action, Plaintiffs moved for entry of default and filed a Motion for Default Judgment, Attorneys' Fees and Costs. (ECF Nos. 10, 11.)  The Clerk entered default on December 30, 2022, (ECF No. 12), and filed a corrected Entry of Default on February 22, 2023.  (ECF No. 13.)  In the instant Motion, Plaintiffs Denson and Santiago seek individual default judgments of $5,325 and $4,550—the respective amounts that each paid toward the canceled Cruise.  (Mem. Supp. Mot. Default J., ECF No. 11-1, at 3–5, 8.)  Plaintiffs also seek attorneys' fees in the amount of $42,150.50 and $660 in costs pursuant to the NJCFA and the ICFA.  (*Id.* at 6–8.)

## II. *Legal Standards*

After an entry of default under Rule 55(a), a party may move for default judgment.  Fed. R. Civ. P. 55(b)(2).  Entry of default does not alone entitle a plaintiff to judgment as of right:

> The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact . . . [but] is not held . . . to admit conclusions of law.  In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover.  The court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action.

*Ryan*, 253 F.3d at 780 (citations omitted).  "In the Fourth Circuit, district courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'"  *Vasquez-Padilla v. Medco Props., LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017).

In addition, this Court has "an independent obligation to confirm the existence of subject-matter jurisdiction [which] is especially important when considering a motion for default judgment." *Wells Fargo Bank, N.A. v. Gateway Int'l Logistics, Inc.*, Civ. No. JRR-22-2487, 2023

4

WL 2473255, at \*3 (D. Md. Mar. 13, 2023); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A plaintiff bears the burden of establishing subject matter jurisdiction and it is presumed that a federal court lacks such jurisdiction until a plaintiff demonstrates the contrary. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Relevant to this case, a federal district court has jurisdiction under CAFA if: (1) at least one defendant and one member of the putative class are citizens of different states; (2) the number of named and unnamed class members is 100 or more; and (3) the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). "While CAFA's 'provisions should be read broadly,' the plaintiff still must plausibly allege jurisdiction." *Skipper v. CareFirst BlueChoice, Inc.*, Civ. No. DLB-21-1022, 2023 WL 2410858, at \*3 (D. Md. Mar. 8, 2023) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). To do so, a plaintiff must plead "specific factual allegations that allow the court to draw reasonable inferences of [CAFA's] jurisdictional prerequisites." *Id.* (citing *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017)). "A conclusory invocation of CAFA is insufficient to establish subject matter jurisdiction[.]" *Id.* (citing *Scott*, 865 F.3d at 195).

### III. Analysis

For the reasons explained below, the Court must dismiss this case for lack of subject matter jurisdiction. Accordingly, the Court cannot reach the merits of Plaintiffs' claims and will therefore deny Plaintiffs' Motion for Default Judgment, Attorneys' Fees and Costs.

### A. Default Judgment

Because Plaintiffs rely solely upon CAFA as a basis for this Court's original jurisdiction, (Compl. ¶ 32), they must plausibly allege that each of the jurisdictional prerequisites of 28 U.S.C.

§ 1332(d) are satisfied. *See Skipper*, 2023 WL 2410858, at *3. Plaintiffs' Complaint easily satisfies CAFA's minimal diversity requirement, as Capital Jazz is incorporated in Maryland and Plaintiffs are residents of Illinois and New Jersey. (Compl. ¶¶ 7, 19, 31.) Because Plaintiffs allege that "an overwhelming majority" of 146 Better Business Bureau complaints concern customers who were unable to secure Cruise refunds, (*id.* ¶ 54), the Court can also reasonably infer that the putative class includes at least 100 members.

But even when affording Plaintiffs' Complaint a liberal construction, the Court is unable to make the same inference regarding the amount in controversy in this case. The Complaint specifies that Plaintiffs Denson and Santiago have suffered combined damages totaling $9,875 due to Capital Jazz's failure to refund their purchases. (*Id.* ¶ 14, 26.) But the remainder of Plaintiffs' allegations regarding damages are too ambiguous to allow the Court to infer that the aggregate amount in controversy exceeds five million dollars. Plaintiffs allege "upon information and belief" that a "substantial number of" customers not named in this action, each of whom paid "as much as $8,478 for the Cruise," were denied refunds by Capital Jazz. (*Id.* ¶¶ 53, 55.) Specifically, Plaintiffs assert that: (1) 146 Cruise passengers complained to the Better Business Bureau about Capital Jazz, and an "overwhelming majority of" these complaints sought Cruise refunds; (2) four Cruise passengers submitted Facebook complaints regarding Cruise refunds; and (3) a television news article cited refund-related complaints raised by "50" viewers. (*Id.* ¶¶ 54, 58, 60–61.)

Most of the passenger complaints quoted or referenced in Plaintiffs' pleading do not specify the amounts that would-be Cruise passengers paid to Capital Jazz. (*Id.* ¶¶ 54, 57.) But even if the Court assumes that: (1) all 146 Better Business Bureau complaints were made in relation to Cruise refunds; (2) none of the 202 total Cruise complaints referenced in Plaintiffs' pleading are duplicative of one another; and (3) each individual complaint by a putative plaintiff requests

$8,478 (the maximum amount that any one passenger is alleged to have paid for the Cruise), Plaintiffs' total damages (including those of Plaintiffs Denson and Santiago) amount to $1,705,475—a figure well short of CAFA's five-million-dollar jurisdictional threshold.[2]   Other than the refund amounts that Capital Jazz denied its Cruise passengers, the Complaint contains no concrete damages figures that allow this Court to reasonably infer that a greater amount in controversy exists.   For these reasons, Plaintiffs' Complaint falls short of the "specific factual allegations" necessary to allow this Court draw reasonable inferences of CAFA's jurisdictional prerequisites. *Skipper*, 2023 WL 2410858, at *3.   Given this, the Court lacks jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d).

Plaintiffs assert no basis for this Court's original jurisdiction other than CAFA, and each of their claims arise under state law.   As such, the Court lacks subject matter jurisdiction over this case.   Accordingly, the Court denies Plaintiffs' Motion insofar as it seeks a default judgment and dismisses this case pursuant to Federal Rule of Civil Procedure 12(h)(3).

### B.     Attorneys' Fees and Costs

"It is well established that a federal court may consider collateral issues," including motions for costs or attorneys' fees, "after an action is dismissed for want of jurisdiction." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).   As such, the Court briefly considers whether Plaintiffs' request for attorneys' fees and costs under the NJCFA and the ICFA survives the dismissal of their case.

A civil action under the NJCFA must be brought in a court "of competent jurisdiction." N.J. Stat. Ann. § 56:8-19. New Jersey Courts have also recognized that parties must achieve some

---

[2] Other circuits have recognized that a court may include attorneys' fees in its calculation of the amount in controversy in a CAFA action. *See, e.g., Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018).   But, even if the $42,150.50 in attorneys' fees requested by Plaintiffs were included in the Court's analysis, the amount in controversy in this case would remain well below CAFA's five-million-dollar threshold.

success on the merits as a prerequisite to an award of fees or costs under the NJCFA. *See, e.g.*, *Mullin v. Auto. Prot. Corp.*, Civ. No. RBK-07-3327, 2008 WL 4509612, at *4 (D.N.J. Sept. 29, 2008) ("A party who successfully brings an NJCFA claim is entitled to recover 'reasonable attorneys' fees, filing fees and reasonable costs of suit.'") (citation omitted). Accordingly, the Court is unable to award fees or costs pursuant to the NJCFA because it lacks jurisdiction to consider the merits of Plaintiffs' NJCFA claim.

Plaintiffs' request for fees and costs under the ICFA is also unavailing. The ICFA enables a court to award "reasonable attorney's fees and costs to the prevailing party." 815 Ill. Comp. Stat. Ann. 505/10a(c). A "prevailing party" under the ICFA is one who "is successful on any significant issue in the litigation that achieves some benefit that was sought in bringing suit." *Aliano v. Transform SR LLC*, 167 N.E.3d 665, 677 (Ill. App. Ct. 2020) (citation omitted). Here, Plaintiffs are not "prevailing" parties because the Court does not reach the merits of their ICFA claim. As such, the Court denies Plaintiffs' Motion insofar as it seeks attorneys' fees and costs.

### IV. Conclusion

For the reasons stated above, a separate Order shall issue denying Plaintiffs' Motion for Default Judgment, Attorneys' Fees and Costs (ECF No. 11) and dismissing this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

DATED this 20 day of April, 2023.

BY THE COURT:

James K. Bredar
Chief Judge

8